UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TECHNOGYM S.p.A.,

    Plaintiff,

    v.

SPORTS ART AMERICA, INC.,

    Defendant.

Case No. C10-0358RSL

ORDER CONSTRUING CLAIMS OF THE '850 AND '592 PATENTS

    Plaintiff Technogym S.p.A. ("Technogym") is the exclusive licensee of three patents acquired from Nash Nazim, a Canadian citizen. Two of the three patents are asserted in this litigation: (1) United States Patent No. 6,786,850 ("the '850 Patent"), titled Exercise Apparatus for Simulating Skating Movement, and (2) United States Patent No. 7,556,592 ("the '592 Patent"), titled Method of Using Exercise Apparatus for Simulating Skating Movement (collectively, the "patents").

    Plaintiff contends that defendant Sports Art America, Inc. has infringed the patents by selling an allegedly infringing product, the S770 Pinnacle Trainer. The parties disagree regarding the interpretation of several claim terms contained in the patents.

    Determining whether a particular product infringes an existing patent involves a two-step analysis. The Court must first identify the proper construction of the asserted patent claim, an

ORDER CONSTRUING CLAIMS
OF THE '850 AND '592 PATENTS - 1

exercise which the Supreme Court has determined is a matter of law. Markman v. Westview Instruments, Inc., 517 U.S. 370, 384-91 (1996). After the claim has been properly construed, the fact finder determines whether the accused device infringes the claim. The Federal Circuit recently reiterated that, although the claims of the patent define the invention to which the patentee is entitled the right to exclude, the claim construction analysis must focus on how a person of ordinary skill in the art would understand the claim terms after reading the entire patent. Phillips v. AWH Corp., 415 F.3d 1303, 1321, 1323 (Fed. Cir. 2005).

> It is the person of ordinary skill in the field of the invention through whose eyes the claims are construed. Such person is deemed to read the words used in the patent documents with an understanding of their meaning in the field, and to have knowledge of any special meaning and usage in the field. The inventor's words that are used to describe the invention – the inventor's lexicography – must be understood and interpreted by the court as they would be understood and interpreted by a person in that field of technology. Thus the court starts the decisionmaking process by reviewing the same resources as would that person, *viz.*, the patent specification and the prosecution history.

Phillips, 415 F.3d at 1313 (quoting Multiform Desiccants, Inc. v. Medzam, Ltd., 133 F.3d 1473, 1477 (Fed. Cir. 1998)).

The Phillips decision sets out a framework for claim construction that synthesizes prior law while rejecting the earlier tendency to over-emphasize extrinsic evidence. The claims themselves, rather than dictionaries, encyclopedias, and treatises, provide a context for the contested terms and comparisons against which to measure the scope of the various claims. Phillips, 415 F.3d at 1314-15. Unless the meaning of the claim language is "readily apparent even to lay judges" (Id. at 1314), the court should "rely heavily" on the patentee's written description of the invention (Id. at 1317), giving the claims "their broadest reasonable construction 'in light of the specification as it would be interpreted by one of ordinary skill in the art.'" Id. at 1316 (quoting In re Am. Acad. of Sci. Tech. Ctr., 367 F.3d 1359, 1364 (Fed. Cir. 2004)). Other evidence of how the patentee and the PTO understood the claims contained in the prosecution history can also inform the meaning of the claim language, although the Federal

Circuit warns that this resource sometimes lacks the clarity of the patent itself. Id. at 1317.

When interpreting claim terms, district courts may also "rely on extrinsic evidence, which 'consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." Phillips, 415 F.3d at 1317 (quoting Markman, 52 F.3d at 980). Such evidence is especially useful for helping the court understand the underlying technology, explaining how an invention works, and establishing the way in which one skilled in the art would use the claim terms. Phillips, 415 F.3d at 1318. Courts should not, however, put too much emphasis on extrinsic evidence as the starting point for construing claim terms because such evidence "is unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence." Phillips, 415 F.3d at 1319. The claim construction methodology set forth in Texas Digital Sys., Inc. v. Telegenix, Inc., 308 F.3d 1193 (Fed. Cir. 2002), which encouraged district courts to rely on dictionary definitions when ascertaining the ordinary meaning of particular claim terms, with recourse to the specification serving only as a check on the dictionary definition, was rejected:

> The main problem with elevating the dictionary to such prominence is that it focuses the inquiry on the abstract meaning of words rather than on the meaning of claim terms within the context of the patent. Properly viewed, the "ordinary meaning" of a claim term is its meaning to the ordinary artisan after reading the entire patent. Yet heavy reliance on the dictionary divorced from the intrinsic evidence risks transforming the meaning of the claim term to the artisan into the meaning of the term in the abstract, out of its particular context, which is the specification.

Phillips, 415 F.3d at 1321.

Even while rejecting the methodology of Texas Digital, the Federal Circuit acknowledged that the purpose underlying that decision, namely to avoid "one of the cardinal sins of patent law – reading a limitation from the written description into the claims," was sound. Phillips, 415 F.3d at 1319-20, 1323 (quoting SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc., 242 F.3d 1337, 1340 (Fed. Cir. 2001)). The court also recognized:

ORDER CONSTRUING CLAIMS
OF THE '850 AND '592 PATENTS - 3

> [T]he distinction between using the specification to interpret the meaning of a claim and importing limitations from the specification into the claim can be a difficult one to apply in practice. However, the line between construing terms and importing limitations can be discerned with reasonable certainty and predictability if the court's focus remains on understanding how a person of ordinary skill in the art would understand the claim terms. For instance, although the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments. In particular, we have expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment. That is not just because section 112 of the Patent Act requires that the claims themselves set forth the limits of the patent grant, but also because persons of ordinary skill in the art rarely would confine their definitions of terms to the exact representations depicted in the embodiments.

Phillips, 415 F.3d at 1323 (citations omitted).

Having reviewed the memoranda and exhibits submitted by the parties and having heard the arguments of counsel at the hearing on June 9, 2011, the Court finds as follows:

**A.  Skating or Roller Blading Movement.**

The parties dispute the construction of the term "skating or roller blading movement" as found in claims 1 and 17 of the '850 patent and claim 1 of the '592 patent. For example, claim 1 of the '850 patent claims, "An exercise apparatus for simulating skating or roller blading movement in a user . . . ." '850 Patent at col. 8, lines 62-63. Plaintiff proposes the following construction: "A muscle exercising movement, as exhibited in skating or rollerblading." Defendant proposes, "An athlete's natural skating or roller blading movement, whereby the user's legs travel simultaneously in a lateral and rearward motion to achieve a forward motion."

Plaintiff's proposed construction relies in part on evidence regarding the accused device. However, "claims may not be construed with reference to the accused device." Wilson Sporting Goods Co. v. Hillerich & Bradsby Co., 442 F.3d 1322, 1330 (Fed. Cir. 2006) (citations omitted). Plaintiff also relies on a report from its expert. However, reliance on extrinsic evidence is improper because the term can be construed based on the intrinsic evidence. See, e.g., Philips,

ORDER CONSTRUING CLAIMS
OF THE '850 AND '592 PATENTS - 4

415 F.3d at 1319. In fact, in its responsive memorandum, plaintiff apparently agrees that the term should be construed to include a "natural movement." Plaintiff's Responsive Brief at p. 3 ("Plaintiff agrees with the Court in *New York University*, a substantially 'normal,' 'realistic' and 'natural' skating or roller blading movement must be simulated, to exhibit the motion covered by the terms in question."). Other than seeking inclusion of the term "natural," defendant appears to have abandoned its proposed construction including "whereby the user's legs travel simultaneously in a lateral and rearward motion to achieve a forward motion." As plaintiff notes, the construction cannot require the legs to travel "simultaneously" in that manner because the user "would not achieve forward motion, as required, but instead do the splits and end up on his or her face." Plaintiff's Responsive Brief at p. 4.

Construing the term to include the word "natural" does not improperly import a limitation from the specifications into the claim. Rather, it is consistent with the purpose of the invention, which is to "simulate a natural skating or roller blading movement." Plaintiff's Opening Brief, Ex. A ('850 Patent File History, Reply to Office Action of March 2, 2004 at p. 4). That purpose is also supported by the Summary of the Invention, which states that an object of the invention "is to provide [an] exercise apparatus which is designed to simulate an athlete's natural ice skating or roller blade movement during forward motion." '850 Patent at col. 2, lines 6-7; id. at col. 2, lines 17-19 (explaining that an object of the invention is "to provide a robust exercise apparatus which is adapted to support a user's feet in movement during a natural skating motion."). The title of the invention is "Exercise Apparatus for Simulating Skating Movement." '850 Patent. The patents distinguish prior art, which did not mimic actual skating. '850 Patent at col. 1, lines 39-54. That evidence demonstrates that the patent is not merely directed towards exercising certain muscles, but towards simulating a natural skating or roller blading movement.

Therefore, one of ordinary skill in the art would have understood the term to mean "a user's natural skating or roller blading movement."

**B. Curving Downwardly and Rearwardly.**

The parties dispute the meaning of this phrase, which appears in claims 11-20 of the '850 patent. For example, claim 11 of the '850 patent claims "at least one pair of elongated guide rail assemblies oriented in a substantially mirror arrangement and each extending in a direction away from the other from a substantially adjacent raised proximal upper end portion and curving downwardly and rearwardly to a lower distal end portion." '850 Patent at col. 10, lines 9-11.

Plaintiff contends that the term should be construed as "in a curve extending down and or toward the rear of the apparatus." Defendant contends that the language should be construed as "curving downwardly and curving rearwardly." The term "curving downwardly" is separately construed below.

Plaintiff notes that other claims in the '850 patent and claims in the '592 patent use other phrases, such as "continuously curving downwardly and/or rearwardly" and "curving rearwardly and extending downwardly." Defendant responds that it has never disputed the meaning of the phrase "curving rearwardly and extending downwardly" and has never disputed the meaning of "continuously." Defendant concedes that the claims that do not include the phrase "curving downwardly" should not be construed to require that element. Instead, the parties dispute whether the phrase "curving downwardly and rearwardly" requires both a "downward curvature" and a "rearward curvature." "The dispute is that the Plaintiff proposes a construction in which any downwardly and rearwardly extending structure that is curved can be considered 'downwardly and rearwardly curved,' whereas Sports Art proposes that the downward curvature is not the same as the rearward curvature, and that the phrase 'downwardly and rearwardly curved' requires both curvatures." Defendant's Opening Brief at p. 21.

Although plaintiff argues that requiring both a downward and a rearward curvature is merely a preferred embodiment, requiring the structure to be "downwardly curving" is consistent with the plain language of the claim. The word "curving" is modified by both adverbs that follow it. In addition, defendant's construction is consistent with the fact that different

1 descriptions are used in other phrases signifying when "downwardly curving" is not required.
2 See, e.g., '592 Patent at col. 16, lines 65-68 ("curving rearwardly and extending downwardly").
3 Although plaintiff relies on the prosecution history from the '592 patent, defendant concedes that
4 the '592 patent does not require both downward curvature and rearward curvature.

5 Plaintiff also argues that the inventor can be his own lexicographer, and intended the
6 same meaning for the phrases "and curving downwardly and rearwardly," "and continuously
7 curving downwardly and rearwardly," "curving rearwardly," and "curving rearwardly and
8 extending downwardly." To that end, plaintiff notes that the summary of the invention states
9 "each said guide rails extending in a direction away from the other from a respective forward
10 proximal end and curving rearwardly to a respective lower distal end portion." '850 Patent at
11 col. 3, lines 18-21. Although an inventor can alter the ordinary meaning of words and phrases,
12 the inventor in this case did not "clearly set forth a definition of the disputed claim term in either
13 the specification or prosecution history." CCS Fitness, Inc. v. Brunswick Corp., 288 F.3d 1359,
14 1366 (Fed. Cir. 2002). In addition to the language plaintiff cites, the summary also includes the
15 language "curving downwardly and rearwardly to a lower distal end portion." '850 Patent at col.
16 2, lines 55-56. In light of the specifications and claim language, it appears that the inventor did
17 not intend for all of the phrases to have the same meaning. Had he so intended, he could have
18 used the same language throughout. Accordingly, the Court finds that one of ordinary skill in
19 the art would have understood the phrase "curving downwardly and rearwardly" to mean
20 "curving downwardly and curving rearwardly."

21 **C.      Curving.**

22 Plaintiff contends that the term "curving" requires no construction. However, it accepts
23 the construction provided by defendant, which is "following a non-linear path." The term does
24 not necessarily have a universal meaning in patent cases and must be construed in order to
25 resolve the parties' dispute regarding the outer boundaries of an invention. See, e.g., Ortho-
26 McNeil Pharm., Inc. v. Caraco Pharm. Labs., Inc., 476 F.3d 1321, 1326 (Fed Cir 2007). "Claim

28 ORDER CONSTRUING CLAIMS
OF THE '850 AND '592 PATENTS - 7

construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by its claims, for use in the determination of infringement." See, e.g., United States Surgical Corp. v. Ethicon, Inc., 103 F.3d 1554, 1568 (Fed. Cir. 1997). Therefore, the Court must determine how a person of ordinary skill in the art, who has read the terms in the context of the claims, the specification, and the prosecution history, would have understood the terms at the time of the invention. Ortho-McNeil Pharm., 476 F.3d at 1326. Accordingly, the Court construes the term to mean "following a non-linear path."

**D.     Curving Downwardly.**

Plaintiff proposes the following construction: "curving toward a point lower on the apparatus, from a point relatively higher." Defendant proposes, "curving downwardly when viewed in a vertical plane (from the side): [drawing included]." Defendant contends that "it is necessary to specify the plane of the downward curvature (vertical) or the direction in which the downward curvature is viewed (from the side, *i.e.*, horizontally), in order to give meaning to the phrase 'downward curvature' as a distinct concept from 'rearward curvature.'" Defendant's Opening Brief at p. 15. In essence, defendant argues that "curving downwardly" means "curvature in a vertical plane, *i.e.*, a curvature that is apparent when viewed from the side or front." Defendant's Response Brief at p. 6. However, the patents do not require curvature when viewed from the side or front.

In fact, as defendant concedes, the specification makes clear that downward curvature is not a requirement of the invention. '850 Patent at col. 8, lines 48-55. Nevertheless, defendant argues that some of the claims "<u>should</u> be limited, in a meaningful way, to downward curvature" because they actually recite downward curvature. Defendant's Responsive Brief at p. 6 (emphasis in original). Even if those claims are limited to include downward curvature, that term need not be defined as defendant urges. Although defendant argues that its proposed construction is required to distinguish "downward curvature" from "rearward curvature," those

terms can be distinguished in other ways. Downward curvature refers to a relative height, while rearward curvature refers to a curvature towards the rear. In light of the intrinsic evidence, the Court finds that one of ordinary skill in the art would have understood the term to mean "curving toward a point lower on the apparatus, from a point relatively higher."

### E. Curving Rearwardly.

Plaintiff proposes the following construction: "curving toward a point to the rear of the apparatus, from a point relatively forward." Defendant proposes, "curving towards the rear when viewed in a horizontal plane (from above) as follows: [drawing included]." Defendant argues, "When these curvatures are turned upside down, they become forward curvatures, and furthermore do not provide a natural skating motion because shuttles guided by such curvatures will rotate <u>inwardly</u> rather than <u>outwardly</u> as they are guided along by <u>forwardly curving paths</u>." Defendant's Opening Brief at p. 18 (emphasis in original). Defendant contends that rearward curvatures are covered by the patents, while "forward curvatures" are not. Defendant argues that only the rail configurations drawn in its opening brief, pages 19-20, should be covered by the patents because only those configurations achieve the natural skating motion described in the specification. Defendant does not cite any evidence to support that contention. Nor has it shown that its construction is required to achieve an outward foot rotation. Even if defendant's contentions were true, defendant's concern is addressed by construing the first disputed term to include a "natural" skating motion.

As plaintiff notes, defendant's proposed construction would impermissibly change a typical or preferred instance into a requirement. Furthermore, defendant's proposed drawings are not found in the patents or file history. In contrast, plaintiff's proposed construction is consistent with the plain language of the claims. Therefore, the Court finds that one of ordinary skill in the art would have understood the term to mean "curving toward a point to the rear of the apparatus, from a point relatively forward."

**F.      Simulates the User's Foot Movement During Skating.**

In its responsive memorandum, defendant states that "it no longer disputes the Plaintiff's construction of this term as 'a movement of the user's foot, as exhibited in skating.'" Defendant's Responsive Claim Construction Brief at p. 22. Accordingly, the Court construes the term as "a movement of the user's foot, as exhibited in skating."

It is so ORDERED.

DATED this 10th day of June, 2010.

*Robert S. Lasnik*
Robert S. Lasnik
United States District Judge