UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TECHNOGYM S.p.A.,

        Plaintiff,

    v.

SPORTS ART AMERICA, INC.,

        Defendant.

Case No.  C10-0358RSL

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY
JUDGMENT ON NON-
INFRINGEMENT

## I.  INTRODUCTION

Plaintiff Technogym S.p.A. ("Technogym") is the exclusive licensee of three patents acquired from Nash Nazim, a Canadian citizen.  Two of the three patents are asserted in this litigation: (1) United States Patent No. 6,786,850 ("the '850 Patent"), titled Exercise Apparatus for Simulating Skating Movement, and (2) United States Patent No. 7,556,592 ("the '592 Patent"), titled Method of Using Exercise Apparatus for Simulating Skating Movement (collectively, the "patents").  Plaintiff contends that defendant Sports Art America, Inc. has infringed the patents by selling an allegedly infringing product, the S770 Pinnacle Trainer.

The parties have filed three motions for summary judgment.  Plaintiff has filed a motion for partial summary judgment of infringement on base Claims 1, 11 and 17 of the '850 Patent.

ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT OF NON-INFRINGEMENT - 1

In the same motion, plaintiff seeks entry of a permanent injunction.  Defendant has filed a motion for summary judgment of non-infringement and a motion for summary judgment of invalidity.  As set forth below, because the Court determines that the accused device does not infringe, it grants defendant's motion for summary judgment on non-infringement, which resolves the case.

## II.  DISCUSSION

### A.     Summary Judgment Standard.

The moving party is entitled to summary judgment under Rule 56 "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  In patent infringement cases, summary judgment is appropriate when it is apparent that only one conclusion as to infringement could be reached by a reasonable jury.  See Telemac Cellular Corp. v. Topp Telecom, Inc., 247 F.3d 1316 (Fed. Cir. 2001) (citing ATD Corp. v. Lydall, Inc., 159 F.3d 534, 540 (Fed. Cir. 1998)); U.S. Phillips Corp. v. Iwasaki Elec. Co., 505 F.3d 1371, 1374-75 (Fed. Cir. 2008) ("Summary judgment on the issue of infringement is proper when no reasonable juror could find that every limitation recited in a properly construed claim either is or is not found in the accused device either literally or under the doctrine of equivalents.").

### B.     Analysis.

Determining whether a particular product infringes an existing patent involves a two-step analysis.  The Court must first identify the proper construction of the asserted patent claim, an exercise which the Supreme Court has determined is a matter of law.  Markman v. Westview Instruments, Inc., 517 U.S. 370, 384-91 (1996).  After the claim has been properly construed, the fact finder determines whether the accused device infringes the claim.  See, e.g., O.I. Corp. v. Tekmar Co., Inc., 115 F.3d 1576, 1580 (Fed. Cir. 1997).  To establish literal infringement,

ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT OF NON-INFRINGEMENT - 2

plaintiff must show that every limitation set forth in a claim is found in the accused product. See, e.g., Southwall Technologies, Inc. v. Cardinal IG Co., 54 F.3d 1570, 1575 (Fed. Cir. 1995). Under the doctrine of equivalents, the patent holder must show that the accused device contains elements that are equivalent to the claim limitations that are not literally present in the accused device. See, e.g., Zelinski v. Brunswick Corp., 185 F.3d 1311, 1316 (Fed. Cir. 1999).  In this case, plaintiff has not asserted any equivalents.

On June 10, 2011, the Court issued an order construing the patent terms.  (Dkt. #48). Claim 1 of the '850 Patent includes the phrase "for simulating skating or roller blading movement in a user," which the Court construed to mean "natural skating or roller blading movement."[1]  The Court noted that the intrinsic evidence demonstrated that the "patent is not merely directed towards exercising certain muscles, but towards simulating a natural skating or roller blading movement."  Order at p. 5.  Based on the parties' agreement, the Court construed the term "simulates the user's foot movement during skating," as "a movement of the user's foot, as exhibited in skating."  Id. at p. 10.

### 1.    Foot Movement.

The '850 Patent claims an apparatus "whereby movement of said shuttles along said associated rail assemblies moves the user's feet in simulated skating or roller blading movement."  '850 Patent at col. 11, lines 1-3.  That limitation is repeated in other claims: "substantially simulates the user's foot movement during skating," (claim 11 of the '850 Patent), "moves the user's feet in simulated skating or roller blading movement," (claim 17 of the '850 Patent), and "moves the feet of a user thereon generally simulating skating or roller blading movement."  (Claim 1 of the '592 Patent).  Each independent claim of the '850 Patent contains

_____

[1] Plaintiff's expert notes that "while coefficients of friction are quite different when comparing ice skating and roller skating [sic], the basic biomechanical movement action for both activities is strikingly similar."  Expert Report of Dr. Cedric X. Bryant, (Dkt. #37-1) ("Dr. Bryant's Report") at pp. 9-10.  In light of that undisputed evidence, this order will not separately analyze the simulation of roller blading and ice skating movements.

ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT OF NON-INFRINGEMENT - 3

1   such a "whereby clause" limitation.  The phrases are incorporated in the dependant claims.  The

2   only claims that do not include the foot movement limitation are claims 9-17 of the '592 Patent,

3   which will be discussed below.  The parties agree that the Court should consider the "whereby"

4   clauses in the claims.  See, e.g., Hoffer v. Microsoft Corp., 405 F.3d 1326, 1329 (Fed. Cir.

5   2001).  Similarly, the parties agree that the Court should consider the preamble language when

6   determining infringement because it "is important to the invention or necessary to give meaning

7   to the claim."  Bicon Inc. v. Straumann Co., 441 F.3d 945, 952 (Fed. Cir. 2006).  The preamble

8   of independent claim 1 of the '850 Patent includes the phrase "for simulating skating or roller

9   blading movement in the user."  Independent claims 11 and 17 include similar phrases.

10  Therefore, the Court considers the issue of infringement in light of the preamble language and

11  the whereby clauses.

12          The patent teaches that as a result of rearwardly curving rails, "the user's leg is rotated so

13  that the toes of the user face outwardly with the leg extending rearwardly."  '850 Patent at col. 6,

14  lines 44-55.  The purpose of the foot rotation is "to provide an increased thrust force."  '850

15  Patent at col. 1, lines 36-39.  Plaintiff does not dispute that outward rotation of the foot is

16  required of all embodiments of the invention.  In fact, both the inventor and the prosecuting

17  attorney confirmed that outward rotation of the toes is essential in roller blading or ice skating

18  movements.  Travis Dep. at pp. 83-84.  In the background of the patent, the inventor

19  distinguished prior art, which left the user's foot in a "forward oriented position," in contrast to

20  skating or roller blading, during which "an individual typically performs a skating stride

21  whereby the position of each foot during each stride moves so as to turn outwardly, to provide an

22  increased thrust force."  '850 Patent at col. 1, lines 36-39; see also Nizam Dep. at p. 32

23  (explaining that "each foot during each stride moves so as to turn outwardly" means "where your

24  toe faces outwardly so that you can thrust."); id. at p. 33 (explaining that it would not be a

25  natural skating stride to turn the foot inward).

26          To support its infringement theory, plaintiff relies heavily on the report of its expert, Dr.

27

28  ORDER GRANTING DEFENDANT'S MOTION FOR
    SUMMARY JUDGMENT OF NON-INFRINGEMENT - 4

Bryant, who opines that when analyzing movement, one must focus on the planes of motion and the pattern of activation of the muscles.  Dr. Bryant Report at p. 3.  Dr. Bryant states that the muscles engaged in using the accused device are the same as the muscles used when skating or roller blading.[2]  Dr. Bryant Dep. at p. 18.  During his deposition, Dr. Bryant explained that his analysis focused on the muscle movements of the legs because the "[t]he foot, for lack of a better term, kind of goes along for the ride."  Id. at p. 69.  However, if the Court were to focus solely on the use of the same muscles and disregard foot movement, it would impermissibly read a limitation out of the claim.  See, e.g., Bicon, Inc., 441 F.3d at 951 (explaining that reading limitations out of a claim is "contrary to the principle that claim language should not be treated as meaningless" and "contrary to the specification").  During Dr. Bryant's deposition, he confirmed that the foot of a skater's trailing leg rotates out at least a few degrees.  Dr. Bryant Dep. at p. 70; see also id. at p. 69 (explaining "In what's depicted in this patent [the foot] would be encouraged to move outward.").  Dr. Bryant does not opine that the accused device simulates the user's foot movement during skating or rotates the user's foot outward.

In an attempt to show that the user's foot rotates outward when using the accused device, plaintiff relies on illustrations from a Taiwanese University study of the accused device.  Two of the illustrations depict a user with outwardly facing feet.  However, the illustrations depict a skeleton with some muscle overlay, rather than a human user.  The evidentiary value of the illustrations is further undermined by the fact that it is unclear how the images were made, including whether they were made during actual use or in a static position.  In contrast, the depictions of a human user, during actual use of the accused device, show that when the leg is

---

[2] Defendant's expert disagrees with Dr. Bryant, and opines that the accused trainer "does not simulate skating in any way, as it is essentially a climbing movement engaging the quadriceps and gluteus maximus muscles, with almost no engagement of the lateral abductor and adductor muscles."  Expert Report of Douglas Baumgarten, (Dkt. #50-7) at p. 5 ("Because the shuttles drop 13 inches while moving outward only 6 inches, the leg muscles used are primarily those used in any climbing machine.").  Although the Court cites Mr. Baumgarten's report, it would have come to the same conclusion even in the absence of that report.

1   extended rearwardly, the toes of the user face inward or in a neutral forward-facing position.

2   Plaintiff's Motion on Infringement at p. 18.

3       Perhaps conceding that the accused device does not rotate the user's toes out, plaintiff

4   argues that the device nevertheless achieves outward foot rotation because the user's heel

5   rotates.  However, the experts do not opine that heel rotation reflects an outward rotation of the

6   foot or the simulation of skating or roller blading.   Plaintiff's expert opines that when using the

7   accused device, the user's foot on the downstroke is "pushing rearward, outward and

8   downward." Dr. Bryant's Report at p. 12.  However, the outward pushing of the foot, which was

9   common in the prior art, is not equivalent to outward rotation of the foot, as evidenced by the

10  inventor's distinguishment of prior art.  '850 Patent at col. 1, lines 39-43.  Also common in the

11  prior art was the use of the same muscles used in skating; the use of the those muscles alone

12  cannot result in infringement.  Rather, as set forth above, the prosecution history and the

13  description of the invention confirm that the invention's improvement over the prior art was the

14  simulation of natural skating foot movements.

15      In the absence of expert support, plaintiff invites the Court to observe images of users of

16  the device.  However, the images do not depict outward rotation of the foot.  Instead, they reveal

17  that on the downstroke, the user's heel lifts and the foot appears to rotate inwardly.

18      Plaintiff also argues that the accused device simulates a natural, non-injurious movement.

19  Although that argument is not contested by defendant, a natural, non-injurious movement does

20  not equate to a natural *skating* movement.  Accordingly, because every element is not included

21  in the accused device, defendant's product does not infringe the '850 Patent or claims 1, 2, or 7

22  of the '592 Patent.

23          **2.    The '592 Patent.**

24      Defendant argues that the accused device cannot infringe any of the claims of the '592

25  Patent because the claims of that patent are not directed to an exercise machine but instead to a

26  *method* of using an exercise or skating machine to simulate skating or roller blading movement

27

28  ORDER GRANTING DEFENDANT'S MOTION FOR
    SUMMARY JUDGMENT OF NON-INFRINGEMENT - 6

1   in a user.  The S770 Trainer "is merely the apparatus on which the method is allegedly

2   performed."  Defendant's Motion for Summary Judgment at pp. 11-12.  The Federal Circuit has

3   clarified that an apparatus cannot directly infringe a method patent.  <u>Cardiac Pacemakers, Inc. v.</u>

4   <u>St. Jude Med., Inc.</u>, 576 F.3d 1348, 1363 (Fed. Cir. 2009).  "Our precedents draw a clear

5   distinction between method and apparatus claims for purposes of infringement liability."  <u>Id.</u>

6   (noting that method claims are not infringed unless "'all steps or states of the claimed process

7   are utilized.'") (quoting <u>NTP, Inc. v. Research in Motion</u>, 418 F.3d 1282, 1318 (Fed. Cir. 2005)).

8   Plaintiff argues that the principle is inapplicable in this case because "the user of the S770

9   Pinnacle Trainer has extensive instructions prepared and provided by Sports Act on use of the

10  device, and likely 'test drives' the S770 with personal guidance from a Sports Art sales person,

11  before and after purchasing."  Plaintiff's Response at p. 7.  That statement, however, is based on

12  speculation and unsupported by any citation to the record.  Therefore, the Court finds that as a

13  matter of law defendant has not infringed the '592 Patent.[3]

### III.  CONCLUSION

15          For all of the foregoing reasons, the Court GRANTS defendant's motion for summary

16  judgment of non-infringement (Dkt. #49).  The Court DENIES plaintiff's motion for partial

17  summary judgment of infringement (Dkt. #53).  The Court DENIES AS MOOT defendant's

18  motion for summary judgment on invalidity (Dkt. #51).  The Clerk of the Court is directed to

_____

24          [3] In addition, claims 1, 2, and 7 of the '592 Patent require independent shuttle movement,
25  an element that is lacking in the accused device.  Dr. Bryant explained that the movement of the
    S770 Trainer is "a dependant action movement."  Dr. Bryan Dep. at p. 44 (describing a
26  "reciprocating" movement: when one shuttle or rail moves up, the other moves down).  Plaintiff
27  does not dispute that independent movement is lacking.

28  ORDER GRANTING DEFENDANT'S MOTION FOR
    SUMMARY JUDGMENT OF NON-INFRINGEMENT - 7

1    enter judgment in favor of defendant and against plaintiff.

2

3

4            DATED this 17th day of October, 2011.

5

6

7                                    _____
                                     Robert S. Lasnik
8                                    United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   ORDER GRANTING DEFENDANT'S MOTION FOR
     SUMMARY JUDGMENT OF NON-INFRINGEMENT - 8